**In the Matter of Montague M. OLIVER, Jr.**

No. 48S00–9802–DI–101.

Supreme Court of Indiana.

June 9, 2000.

---

Respondent, Pro se.

Donald R. Lundberg, Executive Secretary, Seth T. Pruden, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Indiana Supreme Court Disciplinary Commission alleged that lawyer Montague M. Oliver, Jr., after failing to overturn a default judgment that had been entered against his clients, filed a second lawsuit against the prevailing party in an attempt to relitigate the already-adjudicated issues. The trial court found that second lawsuit to be frivolous and groundless after the respondent failed to appear at a key hearing. The Commission also alleged that the respondent engaged in conduct prejudicial to the administration of justice by failing to respond to the Commission's lawful demands for information in response to the clients' ensuing grievance against him. Upon those allegations, this Court appointed a hearing officer who, following evidentiary hearing, found that the respondent engaged in professional misconduct. This matter is now before this Court for final resolution. Our jurisdiction in this case arises from respondent's admission to the bar of this state on December 7, 1982.

Although the respondent sought, and was granted by this Court, an exten-

sion of time during which to file a petition for review of the hearing officer's findings and conclusions, he ultimately failed to file the petition. Where the hearing officer's report is unchallenged, we accept and adopt the findings contained therein, but reserve final judgment as to misconduct and sanction. *Matter of Lamb*, 686 N.E.2d 113 (Ind.1997).

Within that review framework, we now find that in June 1984, a couple (the "clients") hired a contractor to repair the driveway to their home. The contractor quoted a price of $1,700 for the job, which the clients accepted. The contractor ordered concrete from a supplier and installed the a new driveway, but failed to include the cost of the concrete ($1,219.69) in his estimate for the repair. A dispute later arose over who should pay the concrete supplier's bill. By August 15, 1984, the supplier's bill remained unpaid, prompting the supplier to file an "Intention to Hold Mechanic's Lien" against the clients' property. On August 30, 1984, without the assistance of counsel, the clients filed suit against the contractor. While that suit pended, on October 2, 1984, the supplier filed suit to foreclose its mechanic's lien on the clients' property. The clients did not hire counsel or respond to the suit.

On March 14, 1985, the court hearing the clients' claim against the contractor ordered that each should pay half of the bill for the concrete and entered a judgment accordingly. The clients tendered their half of the bill to the supplier, but the contractor did not pay any remaining portion. Although the clients had obtained a judgment against the contractor for the balance of the supplier's bill, they still did not answer or respond to the supplier's foreclosure action. On March 15, 1985, the supplier filed a "Motion for Default Judgment" which was granted five days later. The judgment, including costs and attorney fees, totaled $2,329.46. In June 1986, the clients hired the respondent to defend the action.

The supplier attempted collection of the judgment by proceedings supplemental, with a hearing on July 22, 1986. On July 23, 1986, the supplier filed a "Motion for Additional Attorney Fees" and submitted notice to the Sheriff to execute on the foreclosure judgment by sale of the clients' property. The clients received notice on July 25, 1986, that their property would be sold at Sheriff's sale on September 3, 1986. On behalf of the clients, the respondent filed a "Motion to Vacate" the default judgment and an "Emergency Motion to Stay" the Sheriff's sale. The clients tendered the judgment amount to the clerk as security and the court postponed the Sheriff's sale, conducting a hearing on the clients' "Motion to Vacate" the default judgment on November 3, 1986. On November 6, 1986, the court denied the motion to vacate, and ordered the clerk to release to the supplier, from the funds deposited by the clients, the balance due on the judgment, thereby satisfying the default judgment taken against the clients.

On November 14, 1986, the respondent filed a "Motion to Reconsider" the court's refusal to vacate the default judgment. This motion was denied. On December 1, 1986, the respondent filed a "Motion to Correct Errors" directed at the court's order of November 6. A hearing was held on the motion on February 11, 1987, and taken under advisement by the court. On March 2, 1987, the court concluded it could not rule on the matter due to a conflict of interest. A special judge was then appointed and conducted a hearing on the motion on December 4, 1987, whereupon the motion was denied. The respondent did not pursue an appeal of the denial of the Motion to Correct Errors.

On June 16, 1988, the respondent, on behalf of his clients, filed a lawsuit against the supplier. The new suit asserted two causes of action: slander of title and abuse of process. These allegations were based on the theory that the supplier failed to provide notice of the mechanic's lien as required by I.C. 32–8–3–1. This theory

had not been offered in the clients' Motion to Vacate or Motion to Correct Errors. The supplier responded to the new suit on June 28, 1988, by filing a motion to dismiss. Accompanying the motion were records from the mechanic's lien proceeding that had concluded in the supplier's favor. The supplier also filed a counterclaim against the clients asserting that the new action was frivolous and foreclosed by the previous mechanic's lien litigation. A hearing on the motion to dismiss was set for December 1, 1988. Neither the respondent nor his clients appeared for the hearing and the motion to dismiss was granted. On December 7, 1988, the respondent filed a "Motion to Reinstate" his clients' suit, which the court granted.

The suit proceeded through pretrial conferences, discovery, and a change of venue to Tipton County. On April 15, 1991, the supplier filed a "Motion for Summary Judgment" on its counterclaim. A hearing was scheduled for June 10, 1991, at which respondent and his clients did not appear. That failure to appear resulted in no argument of any kind being presented to the trial court in support of the clients' claims. The court granted the motion for summary judgment and awarded the supplier a judgment against the clients, including attorney fees, for $15,535, finding that the clients' suit against the supplier was "frivolous, irreasonable [sic] and groundless." The day after the hearing the respondent filed a "Motion to Reschedule Hearing," claiming he was unable to attend the hearing and unable to contact the court. The court denied the motion.

On May 10, 1993, the supplier filed a "Complaint to Foreclose Judgment Lien" against the clients' property. The respondent appeared for the clients and requested a "Change of Venue" from the court. A panel of prospective judges was issued, but the respondent failed timely to strike from the panel, so the court struck for him and appointed a special judge. The respondent objected to the court's order appointing the special judge, and despite the fact that he had failed to strike from the panel

created by his motion, the court granted the request.

The complaint filed by the supplier recited the procedural history in the preceding cases and made a demand for foreclosure of the judgment lien. The respondent filed a one-sentence answer denying the facts of the complaint. On December 3, 1993, the supplier filed a "Motion for Summary Judgment" on its complaint, which was set for hearing August 23, 1995. On September 7, 1995, the court granted the supplier's motion and entered a judgment against the clients for the original judgment of $15,535, plus approximately $6,000 in additional interest which had accrued over the years the suit pending, and attorney fees, for a total judgment of $24,926.40. The clients' property was ordered to be sold at Sheriff's sale. The day before the Sheriff's sale, the clients fired respondent and entered into a settlement with the supplier, paying $20,000.

By letter dated July 17, 1996, the Executive Secretary of the Indiana Disciplinary Commission demanded that the respondent respond to a grievance submitted by the clients. Despite an extension of time during which to respond, the respondent failed to provide an answer. The Commission sent a second demand for a response on December 12, 1996, to which the respondent also failed to respond.

■ Pursuant to Ind.Professional Conduct Rule 3.1, lawyers shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. After the respondent's clients were unsuccessful in their suit against the supplier at the trial court level, the respondent chose to file another suit against the supplier in an attempt to relitigate the previously decided case rather than pursue his clients' position through formal appeal of the controlling trial court decision. The respondent thereafter missed the June 10, 1991 hearing at which he might have put forth arguments in sup-

port of his claims. After he failed to appear at that hearing, the trial court found that the suit was frivolous and groundless. Accordingly, we find that the respondent violated Prof.Cond.R. 3.1.

 Indiana Professional Conduct Rule 1.3 provides that lawyers shall act with reasonable promptness and diligence in representing clients. While representing his clients, the respondent failed to attend key hearings and failed timely to strike from the panel brought about by his own motion for change of venue. As such, we find that he failed diligently to attend to his clients' legal affairs while representing them in violation of Prof.Cond.R. 1.3.

Professional Conduct Rule 8.4(d) provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. As a result of the respondent's frivolous suit against the supplier, years of delay and needless additional litigation ensued and what began as a judgment against his clients of approximately $2,300 ballooned to almost $25,000. As such, we find that his conduct was prejudicial to the administration of justice.

Pursuant to Ind.Admission and Discipline Rule 23(10)(a)(2),[1] the Commission on two occasions demanded that the respondent respond to allegations of misconduct contained in the clients' grievance. Though he was granted an extension of time to reply, the respondent never properly responded to the Commission's requests and therefore violated Prof.Cond.R. 8.1(b), which provides that a lawyer in connection with a disciplinary matter shall not knowingly fail to respond to a lawful demand for information from a disciplinary authority.

Having found misconduct, we now turn to the issue of proper sanction. Among the factors we examine in this assessment is the nature of the respondent's misconduct. The respondent's assertion of a frivolous and groundless claim on behalf of his clients, as well as his failure to respond to the Commission's demands for information leads us to conclude that a period of suspension is warranted, with the requirement that the respondent demonstrate his fitness before being readmitted to practice and again allowed to represent the interest of others.

It is, therefore, ordered that the respondent, Montague M. Oliver, Jr., be suspended from the practice of law for a period of not fewer than thirty (30) days, beginning July 14, 2000. At the conclusion of that period of suspension, the respondent may petition this Court for reinstatement to the bar, provided he can satisfy the requirements of Admis.Disc.R. 23(4).

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

---

1. That provision provides:

(2) If the Executive Secretary determines that [a grievance] does raise a substantial question of misconduct, [the Executive Secretary shall] send a copy of the grievance by certified mail to the attorney against whom the grievance is filed (hereinafter referred to as "the respondent") and shall demand a written response. The respondent shall respond within twenty (20) days, or within such additional time as the Executive Secretary may allow, after the respondent receives a copy of the grievance. In the event of a dismissal as provided herein, the person filing the grievance and the respondent shall be given written notice of the Executive Secretary's determination. In the event of a determination that a substantial question exists, the matter shall proceed to (b) hereinafter.